NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0119n.06

No. 12-5145

UNITED STATES OF AMERICA,     )
     )
    Plaintiff-Appellee,     )
     )    **ON APPEAL FROM THE**
v.     )    **UNITED STATES DISTRICT**
     )    **COURT FOR THE WESTERN**
CALVIN RENE CALHOUN, JR.     )    **DISTRICT OF TENNESSEE**
     )
    Defendant-Appellant.     )
     )

FILED
*Jan 31, 2013*
DEBORAH S. HUNT, Clerk

BEFORE: MARTIN, SUHRHEINRICH and GIBBONS, Circuit Judges.

**PER CURIAM.** Defendant Calvin Calhoun, Jr., appeals his sentence following his guilty plea to one count of bank robbery by force or violence in violation of 18 U.S.C. § 2113(a). We AFFIRM, except as to a condition of supervised release. We remand so that the district court may amend the written judgment to delete that condition, thus conforming the judgment to the oral sentence pronouncement.

## I. Background

On January 18, 2011, Defendant robbed the Regions Bank, located at 4643 Riverdale, Memphis, Tennessee. He approached a teller and handed her a note which stated: "Give me all the fucking money and don't say a word or you will die!!!!" In response, the teller gave Defendant $4,259.50, along with a dye pack. The dye pack exploded after Defendant left the bank. He was quickly located and arrested. The total amount of loss to the bank was $4,259.50, because most of the money was burned by the dye pack.

Defendant was released on a $10,000 unsecured bond. He fled the jurisdiction and was later arrested in Houston, Texas, and returned to the Western District of Tennessee.

Defendant pleaded guilty and a presentence report ("PSR") was prepared. The PSR set Defendant's base offense level at 20 pursuant to U.S.S.G. § 2B3.1; added two points because property of a financial institution was taken, U.S.S.G. § 2B3.1(b)(1); added another two points because a death threat was made, U.S.S.G. § 2B3.1(b)(2)(F); and added two points for obstruction of justice, U.S.S.G. § 3C1.1; resulting in a total offense level of 26. Defendant received one criminal history point for two convictions for identity theft, resulting in a criminal history category of I. The resulting advisory guidelines range was 63 to 73 months.

Defendant objected to the PSR's failure to adjust the calculated guidelines range for acceptance of responsibility, arguing that this was "one of those rare cases where" obstruction of justice and acceptance of responsibility applied. He made no other objections.

Both Defendant and his father spoke at sentencing. Defendant's father stated that Defendant had been a "wild child" and had run away in the past, but seemed to have grown up since he had been incarcerated. R. 51 Page ID# 88-90. Defendant told the court that "this experience," the incarceration, "ha[d] been a true wake-up call." R. 51 Page ID# 95.

The district court addressed the objection at the sentencing hearing. The Government agreed that both acceptance of responsibility and obstruction of justice applied, and also made a motion that a third point for acceptance be subtracted from the total. The district court agreed and reduced the guideline calculation to 23, which resulted in a sentencing range of 46 to 57 months. The court imposed a sentence of 52 months, and restitution in the amount of $4,259.00, to be paid by assigning 10% of Defendant's gross income each pay period. Both parties indicated that they had no objections to the sentence imposed.

Defendant appeals.

## II. Analysis

### A. Reasonableness

Defendant claims that the district court imposed a substantively unreasonable sentence it "gave too much weight to the fact that the instant offense was a bank robbery," and "gave an unreasonably low amount of weight to the government's recommendation of leniency by giving it no weight at all." Appellant's Br. at 9–10.[1]

We review the substantive reasonableness of a sentence under an abuse of discretion standard. *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007) (citing *Gall v. United States*, 128 S.Ct. 586 (2007)) (rest of citation omitted). A sentence is substantively unreasonable if "the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008) (citation omitted). A properly calculated, within-guidelines sentence is subject to a rebuttable presumption of reasonableness on appeal. *Id.* (citation omitted).

Defendant claims that the district court gave too much weight to the fact that the instant offense was a bank robbery, citing the following statements: (1) "The penalty, however, for bank robbery is always going to be, unless there's some remarkable set of facts, is always going to be a period of incarceration." R. 51 Page ID# 101 (2) "A sentence of four or five years would typically

---

[1]Defendant also argues that the district court did not appear to recognize its authority to vary downward. As the Government points out, this is a procedural unreasonableness claim. *See United States v. Mitchell*, 681 F.3d 867, 880 (6th Cir. 2012). A plain error standard applies because Defendant failed to object when given the opportunity by the district court. *See United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). We find no indication in the record that the district court misunderstood its authority to depart.

be enough to discourage others." *Id.* 102. Defendant claims that these statements indicate that the court treated this as a typical bank robbery, instead of recognizing that this was an "atypical unarmed bank robbery with no injuries, the money was immediately recovered and the defendant immediately confessed." Appellant's Br. at 9. Defendant claims the district court gave no weight to the Government's recommendation that a sentence should be at the low end of the guidelines.

This argument distorts the proceedings below. The district court made the first statement in the context of discussing 18 U.S.C. § 3553(a)(2)(A) (stating that the court is to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"). The district court observed that a bank robbery "is a traumatic event no matter how" it is characterized. R. 51 Page ID# 101. The court also found that while this robbery might not be as traumatic as others, it was "clearly upsetting," and was observed by more than one teller. *Id.* The district court made the second statement during its discussion of § 3553(a)(2)(B) (stating that court shall consider the need for the sentence imposed "to afford adequate deterrence").

The record reflects that the court made these statements as part of its consideration of the variety of factors required by § 3553(a), before fashioning the sentence. First, it looked at the nature and circumstances of the offense as required by § 3553(a)(1). *See* R. 51 Page ID# 97 ("Now, the first thing we look at is what was done and couple of other things, of course."). The court discussed the history and characteristics of the defendant, *see* § 3553(a)(1). R. 51 Page ID# 98. The court remarked that "[t]here is a lot of information in connection with the psychiatric evaluation," taking

4

into account what Defendant and his father told the court at sentencing. R. 51 page ID# 96-97.[2] The district court noted that although it appeared Defendant had been diagnosed with depression, the medical history and evaluations raised many questions. R. 51 Page ID# 99. The court also looked at rehabilitation, as required by § 3553(a)(2)(D), finding that Defendant would need some mental health counseling, and requiring that he obtain a GED and vocational training. R. 51 Page ID# 103. The court recommended that Defendant be placed in a facility where his mental health condition could be properly treated. R.51 Page ID# 107-08. "[T]his analysis of the considerations the court found most important . . . is just the sort of balancing a sentencing court should be doing." *United States v. Paull*, 551 F.3d 516, 529 (6th Cir. 2009). *See also United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008) (en banc) ("[T]he central lesson [of recent Supreme Court activity is] that district courts ... deserve the benefit of the doubt when we review their sentences and the reasons given for them."). In short, Defendant has failed to rebut the presumption of reasonableness.

### B. Supervised Release

Defendant asserts that the district court erred when it included an additional condition of supervised release in the written judgment that was not part of the sentence orally pronounced at the sentencing hearing. The following condition of supervised release was not mentioned at sentencing:

> The defendant shall be prohibited from incurring new credit charges, opening additional lines of credit, or making an obligation for any major purchases without prior approval of the Probation Officer.

R. 47 Page ID# 69 ¶ 3.

---

[2]On June 13, 2011, the district court ordered a mental evaluation of Defendant. PSR ¶ 43. The medical examiner noted numerous instances of attention-seeking and manipulative behaviors, as well as inconsistent reporting of symptoms. *Id.* The report stated that Defendant presented "several hallmark signs of feigning," and diagnosed Defendant as a malingerer with borderline personality disorder.

We review challenges to a condition of supervised release for abuse of discretion. *United States v. Inman*, 666 F.3d 1001, 1004 (6th Cir. 2012) (per curiam). This involves determining "whether the district court adequately stated in open court at the time of sentencing its rationale for mandating special conditions of supervised release." *Id.* (internal quotation marks and citation omitted). The general rule is that "when an oral sentence conflicts with the written sentence, the oral sentence controls." *United States v. Swanson*, 209 F. App'x 522, 524 (6th Cir. 2006) (internal quotation marks and citation omitted). Standard conditions of supervised release are deemed included in the oral sentence, unless the district court specifically states otherwise. *Id.* This court has not decided whether the court must recite special conditions at the sentencing hearing, *see id.* at 524 n.3, but other courts have required that special conditions be included in the oral pronouncement, *see, e.g., United States v. Jones*, 696 F.3d 932, 938 (9th Cir. 2012); *United States v. Cruz-Nagera*, 454 F. App'x 371, 371 (5th Cir. 2011) (per curiam).

We do not need to resolve this question because the Government "submits that imposing the special condition as part of the judgment, when the court failed to address the special condition as part of its oral pronouncement of sentence, constituted an abuse of discretion in the present case," and asks that the matter be remanded to amend the written judgment to conform with the oral pronouncement. Appellee's Br. at 17.

## C. Restitution

Next, Defendant contends that the district court erred when it imposed restitution, because the money was recovered by the bank. In support, Defendant cites paragraph 8 of the PSR, which states that "Safe Streets did recover the money but most was burnt from the dye pack." Defendant therefore claims that there was no loss to the bank because, (1) undamaged money was returned to

6

the bank; (2) "burnt" money, which would be considered mutilated, was returned to the bank; and (3) "burnt" or dye money, which would be considered unfit, was returned to the bank; and all three types of money can be exchanged at face value pursuant to Treasury Regulation 31 C.F.R. 100.5.[3] Thus, the requirements of 18 U.S.C. § 3663A(b) were satisfied. *See* 18 U.S.C. § 3663A(b) (stating that the order of restitution "shall require that such defendant–in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense . . . return the property to the owner"). Defendant therefore claims that the bank was allowed to recover twice, and "actually make a profit off the bank robbery."

---

[3]31 C.F.R.§ 100.5 Mutilated paper currency.

(a) Lawfully held paper currency of the United States which has been mutilated will be exchanged at face amount if clearly more than one-half of the original whole note remains. Fragments of such mutilated currency which are not clearly more than one-half of the original whole note will be exchanged at face value only if the Director, Bureau of Engraving and Printing, Department of the Treasury, is satisfied that the missing portions have been totally destroyed. The Director's judgment shall be based on such evidence of total destruction as is necessary and shall be final.

Definitions

(1) Mutilated currency is currency which has been damaged to the extent that (i) one-half or less of the original note remains or (ii) its condition is such that its value is questionable and the currency must be forwarded to the Treasury Department for examination by trained experts before any exchange is made.

(2) Unfit currency is currency which is unfit for further circulation because of its physical condition such as torn, dirty, limp, worn or defaced. Unfit currency should not be forwarded to the Treasury, but may be exchanged at commercial banks.

31 C.F.R. § 100.5.

Under the Treasury Regulation, a person or entity would be entitled to receive full value for mutilated currency if it presents more than one-half of the original note to the Department of the Treasury. 31 C.F.R. § 100.5. Furthermore, the Mandatory Victim Restitution Act requires restitution to be reduced by the value of the returned property on the date the property was returned. 18 U.S.C. § 3663A(b)(1)(B)(ii).

The problem is that Defendant did not challenge the restitution order in the district court. *United States v. Freeman*, 640 F.3d 180, 186 (6th Cir. 2011) ("If a party does not object at sentencing to the restitution order, then the order is also reviewed under the plain-error standard.").[4] This means that, on this record we do not know what condition the money was in after it was recovered, and therefore how much, if any, was redeemable with the Department of the Treasury. "A party may not by-pass the fact-finding process of the lower court and introduce new facts in its brief on appeal." *United States v. Bond*, 12 F.3d 540, 552 (6th Cir. 1993) (internal quotation marks and citation omitted). And we do have a "fact" statement in the PSR that the "Total Loss" to the bank was "$4,259.50." Thus, we cannot find plain error on this record.

### D. Restitution Amount

Lastly, while acknowledging that the issue is "almost absurd," Defendant complains that the district court erred because the restitution amount in the written judgment exceeds the amount ordered by the district court at sentencing by fifty cents ($4,259.50 vs. $4,259.00).

---

[4]"To establish plain error, a defendant must show that: (1) an error occurred in the district court; (2) the error was obvious or clear; (3) the error affected defendant's substantial rights; and (4) this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006).

Again, Defendant did not object at sentencing, despite having been given the opportunity by the district court. But since the amount is minuscule, and we are remanding anyway, we ask the district court to correct the written judgment to comply with its oral pronouncement.

### III. Conclusion

Defendant's sentence is AFFIRMED in part; and the case is REMANDED so that the district court can strike special condition 3 of supervised release from the written judgment and correct the amount of restitution to make the judgment conform to the court's oral pronouncement of the sentence.